UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                                                                                                                       No. 18-CR-2853 MV

EVER OROZCO-IBARRA

    Defendant.

**MEMORANDUM OPINION AND ORDER**

THIS MATTER is before the Court on Mr. Orozco-Ibarra's Objections and Sentencing Memorandum [Doc. 283]. The government filed a Response in opposition. Doc. 288. In this Memorandum Opinion and Order, the Court specifically addresses Mr. Orozco-Ibarra's objection to the use of the methamphetamine (actual) guidelines. Doc. 283 at 13. The Court heard argument on this matter on April 29, 2025. Doc. 371. After hearing argument, considering the briefs and relevant law, and being otherwise fully informed, the Court overruled the objection, but found that the argument against the methamphetamine (actual) guidelines was persuasive and that the application of those guidelines is a proper basis for a downward variance.

**BACKGROUND**

On April 24, 2019, a nine-count Superseding Indictment was returned against Mr. Orozco-Ibarra. Doc. 83. As set forth in the Superseding Indictment, between 2015 and 2017, Mr. Orozco-Ibarra was a member of a drug trafficking conspiracy. *Id.* at 2. Doc. 279 ¶13. Throughout that time, he consistently communicated with other members of the conspiracy to arrange the sale of large amounts of cocaine and methamphetamine. *Id.* He also personally delivered cocaine and methamphetamine. *Id.* ¶ 13-14.

On June 8, 2021, Mr. Orozco-Ibarra entered into an agreement with the government

1

pursuant to Fed. R. Crim. P. 11(c)(1)(C). Doc. 279 ¶ 2. As part of that agreement, he pled guilty to Counts 1, 2, 3, and 6 of the Superseding Indictment. *Id.* Specifically, he pled guilty to the following charges: Conspiracy to Commit Distribution and Possession with the Intent to Distribute 500 Grams and More of a Mixture and Substance Containing a Detectable Amount of Cocaine, in violation of 21 U.S.C. § 846, § 841(a)(1) and (b)(1)(B), two counts of Distribution of 50 Grams and More of Methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A), and Conspiracy to Commit Maintaining a Drug-Involved Premises, in violation of 21 U.S.C. § 846 and § 856. *Id.* Mr. Orozco-Ibarra's plea agreement established a sentencing range between 120 and 180 months. *Id.* ¶ 3.

In the Presentence Report ("PSR"), Probation calculated Mr. Orozco-Ibarra's guideline sentence using the methamphetamine (actual) guidelines set forth in the United States Sentencing Guidelines Manual (the "Guidelines"). Doc. 279 ¶ 41. Mr. Orozco-Ibarra filed an Objection to the PSR, in which he objected to Probation's use of the methamphetamine (actual) guidelines to calculate his sentence. Doc. 283 at 13. On April 29, 2025, the Court held a sentencing hearing. After finding Mr. Orozco-Ibarra liable for 40,149.58 converted drug amount, including 1,979.84 grams of methamphetamine (actual), the Court overruled Mr. Orozco-Ibarra's objection to the application of the methamphetamine (actual) guidelines, granted a downward variance from the guideline range of 168-210 months based in part on a policy disagreement with the methamphetamine (actual) guidelines, and sentenced Mr. Orozco-Ibarra to 120 months in custody. *Id.* ¶ 33; Doc. 371. The Court now writes to explain its reasoning.

## DISCUSSION

This Court overruled Mr. Orozco-Ibarra's objection to Probation's use of the methamphetamine (actual) guidelines because those guidelines were appropriately applied

2

pursuant to the Guidelines. U.S.S.G. § 2D1.1(c). In a drug trafficking sentencing, a court must calculate the applicable offense level using the Drug Quantity Table at U.S.S.G. § 2D1.1(c). Note B specifies that courts should "use the offense level determined by the entire weight of the mixture or substance, or the offense level determined by the weight of the … methamphetamine (actual), whichever is greater." U.S.S.G. § 2D1.1(c) n.(B). *See United States v. Davis*, 599 F. App'x 815, 817 (10th Cir. 2013) ("The Guidelines dictate that a defendant's advisory sentencing range for methamphetamine distribution is to be calculated using whichever drug weight—actual or mixed—would produce the greater offense level."); *see also United States v. Gigley*, 213 F.3d 509, 519 (10th Cir. 2000) (reversing and remanding when the district court failed to use the quantity of methamphetamine (actual) to determine the offense level). Mr. Orozco-Ibarra is subject to the methamphetamine (actual) guidelines because he evinced awareness of the purity of the methamphetamine he was selling. *See* Doc. 288-2 at 55; *United States v. Ibarra-Sandoval*, 265 F. Supp. 3d 1249 (D.N.M. 2017) (drug courier not liable for purity when they did not know the purity).

This Court, however, finds that, because the methamphetamine (actual) guidelines are not empirically based and produce unfair outcomes, their application is an appropriate basis for a downward variance. *See Kimbrough v. United States*, 552 U.S. 85 (2007) (holding that, in regard to the analogous disparity in sentencing between powder and crack cocaine, federal district courts have discretion to vary based on policy disagreements). This Court is not alone in that judgment. *See, e.g., United States v. Ortega*, 2010 WL 1994870 (D. Neb. May 17, 2010) (discussing the disparity in sentencing pure and mixed methamphetamine and according those guidelines less deference because they are not empirically grounded). The guidelines for methamphetamine were established based on Congress's mandatory minimums, themselves often based on calls for ever-

3

increasingly severe drug sentences, and not through the Sentencing Commission's usual empirical approach. *Id.* at 3-4.

Perhaps as a result, the purported logic behind the guidelines simply does not hold up. *See United States v. Hayes*, 948 F. Supp. 2d 1009, 1018-28 (N.D. Iowa 2013) (criticizing the methamphetamine guidelines as "fundamentally flawed" and arguing that they "fail to promote the purposes of sentencing"). The distinction between mixed and pure methamphetamine guideline calculations reflects the assumption that drugs are increasingly mixed with other substances as they move lower down the supply chain, meaning that pure substances are only found with leaders of drug trafficking. U.S.S.G. § 2D1.1 cmt. n.26(c). That is no longer the case for methamphetamine. According to DEA data, methamphetamine now averages more than 90 percent purity. Doc. 283 at 18; *Ibarra-Sandoval*, 265 F. Supp. 3d at 1255-56. Citing this illogic, district courts across the country have criticized the methamphetamine (actual) guidelines and used their policy disagreement with these guidelines as a basis to vary downward from advisory guideline sentencing ranges. *See e.g.*, *Ibarra-Sandoval*, 265 F. Supp. 3d at 1256; *see also United States v. Santillanes*, Doc. 60 (Transcript of Sentencing Proceedings) at 31, Docket No. CR 07-619 (D.N.M. Sept. 19, 2008) (Brack, J.) ("I find that there is no empirical data or study to suggest that actual purity should be punished more severely by an arbitrary increase of the four levels in this case….The table…seems to be black box science, as best I can determine. I probably would not allow it under *Daubert*, based on what I know at present.")

In rejecting requests for downward variances based on the mixture/purity disparity in the methamphetamine guidelines, other courts in this district do not cast doubt on the empirical arguments against the methamphetamine (actual) guidelines, but rather highlight the dangers of methamphetamine in general. *See United States v. Jimenez-Marquez*, 750 F. Supp. 3d 1267, 1271

(D.N.M. September 24, 2024) (recognizing the validity of empirical arguments against the methamphetamine (actual) guidelines but declining to vary downward because of countervailing policy reasons, namely the increasing number of methamphetamine overdoses and deaths in the United States, the addictive and deadly nature of methamphetamine, and the influence of international drug trafficking organizations in the United States). This Court, like its sister courts, is familiar with and takes extremely seriously the harms that methamphetamine inflicts in this community and across the country. Methamphetamine, like many other drugs, ruins lives.

Despite its familiarity with the harms of methamphetamine, this Court takes issue with the fact that pure methamphetamine is sentenced much more harshly than equivalently harmful drugs, like fentanyl. Congress's statutory minimums and the Sentencing Commission's Guidelines certainly take seriously the deadly harm of all drugs, as evinced by the severe punishments accorded to the possession and distribution of drugs like fentanyl. Yet, pure methamphetamine is punished even more severely, for no discernable reason. Recognizing this inequity, some courts have suggested that the appropriate remedy would be to sentence other drugs even more harshly. *See id.* at 1272 ("The Court agrees that treating fentanyl, an extremely deadly drug, differently from methamphetamine (actual) is illogical…[and] believes the solution is not to lower methamphetamine (actual) sentences, as Defendant suggests, but to urge the Sentencing Commission to raise fentanyl sentences to align with those of methamphetamine (actual)."). This Court respectfully disagrees. Based on its experience over the past thirty years, the Court does not find that excessively long sentences for drug trafficking are effective in protecting our communities or the country at large from the harms of drug trafficking. Indeed, with The First Step Act, Congress has begun to agree with this thinking. *See* 18 U.S.C. § 924 (congressional action reducing sentences for drug offenses). Accordingly, this Court firmly believes that the proper remedy for

the relevant sentencing inequities is to lower the methamphetamine (actual) guidelines to bring them in line with those of other drugs. Unless and until the Sentencing Commission does so, the Court finds that, in order to impose a sentence that is sufficient but not greater than necessary to achieve the goals of sentencing, a downward variance from a sentence resulting from application of the methamphetamine (actual) guidelines is warranted.

## CONCLUSION

While the PSR correctly applied the methamphetamine (actual) guidelines to determine Mr. Orozco-Ibarra's advisory guidelines sentencing range, the Court has grave concerns about the logic and empiricism undergirding the methamphetamine (actual) guidelines. Because the methamphetamine (actual) guidelines are out of step with the Guidelines for other similarly dangerous drugs, and because application of the methamphetamine (actual) guidelines unfairly inflates a defendant's advisory guidelines sentencing range, application of the methamphetamine (actual) guidelines is a proper basis for a downward variance.

**IT IS THEREFORE ORDERED,** as the Court determined during the sentencing hearing, that Mr. Orozco-Ibarra's objection to the application of the methamphetamine (actual) guidelines is overruled, but the application of those guidelines provides a proper basis for a downward variance.

ENTERED this 15th day of July 2025.

_____
MARTHA VÁZQUEZ
SENIOR UNITED STATES DISTRICT JUDGE